UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-00257-WYD

ROBERT P. MONTOYA,

 Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

 Defendant.
_____

**ORDER**
_____

I. INTRODUCTION

  THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for Supplemental Security Income ["SSI"] benefits under Title XVI of the Social Security Act ["the Act"], 42 U.S.C. §§ 1381-83c. For the reasons stated below, this case is reversed and remanded for further factfinding.

  Plaintiff, born in March 1954, was 53 years old at the time of the April 2007 decision of the Administrative Law Judge ["ALJ"]. (Transcript, ["Tr."], 14, 110). He has a high school education. (*Id.* 14, 139). Plaintiff claimed that he became disabled on December 2, 2004, due to diabetes, hypertension, shortness of breath, and complications from diabetes. (*Id.* 64, 134.)[1] I note that Plaintiff has a long history of diabetic neuropathy and hypertension, both uncontrolled, because of his fears and persistent failure and refusal to take prescribed medications.

---

[1] In his application Plaintiff claimed that he became disabled on August 1, 2002, but changed his onset date at the hearing to December 4, 2004.

The Commissioner, through Colorado Disability Determination Services ["DDS"] denied Plaintiff's claim at the initial determination stage in May 2005. (Tr. 62-63, 87-89.) A request for hearing was then filed. (*Id.* 86). The ALJ held a hearing on January 31, 2007. (Tr. 21-61.) In a decision dated April 27, 2007, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act because he could perform his past relevant work as a telemarketer, musician, or teacher. (*Id.* 13-20.) This decision is discussed in more detail below.

The Appeals Council declined review of the ALJ's decision. (Tr. 4-6.) The ALJ's decision is the final administrative decision, and this case is ripe for review.

## II. ANALYSIS

### A. The ALJ's Decision

The ALJ made the following findings in his April 2007 decision:

1. Plaintiff has not engaged in substantial gainful activity since December 4, 2004. (Tr. 14, 19.)

2. Plaintiff has the following severe impairments: diabetes mellituis, hypertension, and an anxiety-related disorder. (Tr. 14, 19.) He does not have an impairment or combination of impairments that meets the criteria of any of the listed impairments. (*Id.*)

3. Plaintiff and his testimony were sincere and forthright. (Tr. 15.) "However, the claimant's allegation that his impairments, either singly or in combination, produce symptoms and limitations of sufficient severity to prevent all sustained work activity is inconsistent with the medical and other evidence of record and is not considered to be fully credible." (*Id.*) Plaintiff's testimony was thus not fully persuasive. (*Id.* at 20.)

4. Plaintiff retains the residual functional capacity ["RFC"] "to perform light work that does not require fine visual acuity; does not require climbing ladders or more than occasional climbing of ramps and stairs; does not require exposure to hazardous machinery or unprotected heights; and does not require the performance of complex tasks (SVP-3 or less). (Tr. 19, 20.)

5. Plaintiff's RFC is consistent with his past relevant work as a musician, telemarketer, or a teacher as those jobs are customarily performed. (Tr. 19-20.) Accordingly, Plaintiff is not prevented from performing his past relevant work, and is not disabled within the meaning of the Social Security Act. (*Id.*)

B. Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

C. Whether the ALJ's Decision is Supported by Substantial Evidence

1. Plaintiff's Mental Impairments

I first address Plaintiff's argument that the ALJ erred in failing to properly assess his mental impairments, since I find that this may also impact the ALJ's findings regarding Plaintiff's RFC and ability to do light work. The ALJ found that Plaintiff had a severe mental impairment in the form of an anxiety-related disorder. (Tr. 14, 19.) As to

functional limitations, the ALJ included in his RFC a finding that Plaintiff can not work at any job that requires the performance of complex tasks (SVP-3 or less). (*Id.* 19, 20.) The ALJ failed, however, to include this RFC finding in his hypothetical question to the vocational expert. (*Id.* at 56-57).

While the ALJ stated that he did not include any limitations related to Plaintiff's anxiety disorder because he said he could not find any (Tr. 57-58), it was plain error not to include the ALJ's explicit finding (based on Dr. Valette's consultative psychological examination that the ALJ gave weight to) that Plaintiff was unable to perform complex tasks. *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993) (testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the ALJ's decision); *see also Wiederholt v. Barnhart*, No. 03-3251, 2005 WL 290082, *5 (10th Cir. 2005) ("[b]ecause the ALJ omitted, without explanation, impairments that he found to exist ..., the resulting hypothetical question was flawed"). This error is particularly significant since the ALJ found that Plaintiff could perform his past relevant work as a teacher and a musician, both of which have skill levels well in excess of three as testified to by the vocational expert. (Tr. 56.) Accordingly, even the Commissioner concedes that the ALJ erred in finding that Plaintiff could perform his past work as a teacher and musician. This error alone, which I find is not harmless, requires that the case be remanded so that a proper hypothetical question can be asked.

I now turn to the ALJ's other findings regarding Plaintiff's mental impairments. The ALJ noted that the opinion of state agency psychiatrist Dr. Garnand, who prepared a Psychiatric Review Technique Form in May 2005 (Tr. 276-89), was that Plaintiff did

not have severe mental impairments. (*Id.* at 17.) The ALJ found that while Dr. Garnand's opinion "was consistent with the record", she gave greater weight to the opinions of Dr. Valette, the consultative examiner. (*Id.*)

Dr. Valette diagnosed Plaintiff with major depression and panic disorder with a GAF of 60.[2] (Tr. 557.) He opined that Plaintiff needed to have a combination of therapy and medication for his panic disorder and depression (*id.*) and as long as Plaintiff is not medicated and not in treatment his condition will stay the same or get worse. (*Id.* at 558.) Dr. Valette opined that Plaintiff suffers from mild limitations in carrying out simple instructions and in the ability to make judgments on simple work-related decisions, moderate limitations in understanding and remembering complex instructions, and marked limitations in the abilities to carry out complex instructions and to make judgments on complex work-related decisions. (*Id.* 559.) He also opined that Plaintiff suffers moderate limitations in the ability to interact appropriately with the public, interact appropriately with a supervisor, interact appropriately with co-workers and in the ability to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.* 560).

The ALJ found that while Dr. Valette's opinions were supported by objective findings, every opinion of Dr. Valette should be rejected with one exception—the inability of Plaintiff to perform complex tasks. This is despite the fact that the ALJ initially stated that she gave Dr. Valette's findings greater weight than that of

---

[2] A GAF score of 51 to 60 "indicates 'moderate symptoms,' or 'moderate difficulty in social, occupational, or school functioning.'" *Roybal v. Astrue*, No. 06-4189, 2007 WL 1475276, at *1 (10th Cir. 2007) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition (2000) ["DSM-IV"]).

Dr. Garnand. I first note that the ALJ's decision appears to be inconsistent regarding the weight the ALJ gave to the opinions of Drs. Valette and Garnand. It appears that the ALJ actually gave the greatest weight to the opinions of nonexamining state agency physician Dr. Garnand, but did not state this in her decision. On remand, the ALJ needs to accurately explain the weight she has given to each medical source, including Dr. Garnand. *See Valdez v. Barnhart*, No. 01-1531, 2003 WL 366751 at *2 (10th Cir. 2003) ("If an ALJ intends to rely on a nonexamining source's opinion, he must explain the weight he is giving it") (citing 20 C.F.R. § 416.927(f)(2)(ii)).

Second, I find that the ALJ's rejection of Dr. Valette's opinions is not supported by substantial evidence. The reason given for rejecting Dr. Valette's opinions was that the ALJ found that these opinions were not consistent with "other substantial evidence of record." (Tr. 17.) The ALJ failed, however, to state what other substantial evidence of record she was relying on and I am unable to determine this from my review of the record. The only example that the ALJ gave was her finding that Plaintiff's ability to make 30 Valium last for a year is consistent with occasional intermittent, rather than ongoing panic. (*Id.*) This was, however, a medical judgment that the ALJ was not qualified to make. *See Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (the ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals). The ALJ also did not explain why she selectively picked one functional limitation imposed by Dr. Valette but not the others.

Further, if the ALJ was relying on the opinion of Dr. Garnand, the nonexamining state agency psychologist, as evidence to reject Dr. Valette's opinions, the Tenth Circuit

has noted that the "'findings of a nontreating physician [such as Dr. Garnand] based upon limited contact and examination are of suspect reliability.'" *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (quoting *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987)). Finally, despite the ALJ's statement to the contrary, I do not find other evidence in the record that supports Dr. Garnand's findings. *See Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at * 3 (10th Cir. 2004) (if the ALJ relies heavily on opinions of an agency medical consultant that did not examine the claimant, those "opinions must themselves find adequate support in the medical evidence").

Also, while the ALJ stated that Dr. Garnand's opinions that Plaintiff's mental impairments are not severe was consistent with the record, the ALJ based this on the fact that Plaintiff was not referred for a psychiatric evaluation or treatment. This finding is incorrect, as discussed below, because Dr. Nieto referred Plaintiff for a psychological consultation and in the consultation, Dr. Nizami recommended that Plaintiff receive counseling. (Tr. 348, 356, 383.) Dr. Sumpter, Plaintiff's treating cardiologist, also advised Plaintiff to seek counsel or psychiatric help to deal with the anxiety. (*Id.* at 198.) Dr. Valette also believed that Plaintiff needed to be in therapy. Accordingly, this finding of the ALJ was not supported by substantial evidence.

The ALJ's errors in assessing Plaintiff's mental condition are further compounded by the fact that the ALJ gave great weight in her decision to the fact that Plaintiff's diabetes, hypertension and other medical issues were poorly controlled due to Plaintiff's failure to follow prescribed treatment. (Tr. 15-16, 19.) The ALJ stated that the "medical records are replete with examples of the claimant's medical noncompliance *for no justifiable reason*." (*Id.* at 16) (emphasis added). However, the ALJ ignored or failed to

properly consider the evidence that Plaintiff's failure to comply with his prescribed medical treatment was due to his mental impairments.  Specifically, as the ALJ noted but then ignored, consultative examiner Dr. Valette found that Plaintiff was not getting medical treatment because he was fearful of it, that he needed to be in therapy and on medication for his panic, and that further evaluation was needed to rule out a personality disorder with paranoid traits.  (*Id.* 17.)

Further, there was ample other evidence in the record of Plaintiff's fears of taking medications and the possible psychiatric basis for such.  (Tr. at 128, 198-99, 221, 303, 305, 307-09, 333, 356.)  The Commissioner acknowledges that Dr. Sumpter's diagnosis of anxiety disorder "resulted in Plaintiff's non-compliance with his medications and uncontrolled hypertension and diabetes." (Def.'s Resp. Br. at 6.)   Also, Dr. Nieto noted in his evaluation that Plaintiff was a danger to himself because he refuses medication and workups and scheduled a psychological consultation as a result.  (Tr. 356, 383.) The consultant, Jackie Green, Ph.D., concluded that Plaintiff suffers from generalized anxiety, PTSD and situational depression with a GAF of 45/60.  (Tr. 349.)  Dr. Nizami, who also was involved in the psychological consultation, recommended Paxil and that Plaintiff use Catholic Family Charities as a resource for outpatient counseling due to his financial condition.  (*Id.* 348.)  The ALJ chose to ignore and/or reject this evidence, and improperly made a lay opinion that there was no justification for Plaintiff's refusal to comply with treatment.[3]

---

[3] The ALJ can not simply ignore the GAF evidence.  *Simien v. Astrue*, No. 06-5153, 2007 WL 1847205, at *2 (10th Cir. 2007) (finding that the ALJ erred in ignoring the claimant's GAF scores that ranged from 30 to 50).  "Standing alone, a low GAF score does not necessarily indicate an impairment seriously interfering with a claimant's ability to work."  *Lee*,  2004 WL 2810224, at *3 (10th Cir. 2004)  "A GAF score of fifty or less, however, does suggest an inability to keep a job."  *Id.*  In *Thomas v. Barnhart*,

The ALJ also chose to ignore the fact that there was evidence in the record that Plaintiff had no money or insurance and could not afford medication. Dr. Rivera noted this in his records, as did Dr. Nizami and Dr. Garnand. (Tr. 232, 288, 348-49, 380.) This could explain why Plaintiff was able to make his Valium last for so long, as he may have been afraid to take it because he might run out and not be able to afford more. This might also be a factor in why Plaintiff was not complying with doctors' directives to take medication. These are also issues that the ALJ should have properly taken into consideration.

Finally, the ALJ denied counsel's request at the hearing that Plaintiff undergo a psychological consultative examination. (Tr. 58-59.) The ALJ stated in his decision that based on his questioning of Plaintiff about his panic attacks, Plaintiff has such attacks a couple of times per month but could not identify any triggers and said that they just happen. (*Id.* 15.) Presumably from the record the ALJ decided that Plaintiff's testimony was not sufficient on this issue; however, this was an improper medical determination by the ALJ. *Winfrey*, 92 F.3d 1017, 1021-22. Further, in deciding that no further psychological consultation was required on this issue, the ALJ ignored the diagnosis by treating physician Dr. Rivera of a panic disorder and the clear recommendation by Dr. Valette, the consultative examiner that the ALJ gave the greatest weight to, that Plaintiff should undergo further evaluation to rule out a non-specific personality disorder with paranoid and dependent traits. (Tr. 232 )

---

No. 04-7141, 2005 WL 2114163, at *3-4 (10th Cir. 2005), a doctor did not indicate whether the claimant's GAF score of 58 "actually affected her ability to function in an occupational setting or affected only her social functions". The ALJ ignored the GAF score and rejected the physician's opinion. *Id.* at *4. The Tenth Circuit noted, "If the ALJ believes that the medical record regarding Mrs. Thomas's mental impairments is insufficient and needs to be further developed, the ALJ must do so." *Id.*

From the foregoing, I find that the ALJ clearly erred in not properly developing the record as to Plaintiff's mental impairments. Accordingly, the ALJ's findings are not supported by substantial evidence. The case must be remanded so that the evidence as to such impairments is properly assessed and evaluated.

    2.   Plaintiff's Physical Impairments

Plaintiff argues that his treating physician Dr. Rivera concluded that Plaintiff is totally and permanently disabled and unable to work at all. He further argues that the ALJ failed to accord the opinions of his treating physicians proper weight and failed to provided legitimate reasons supported by substantial evidence for rejecting their opinions. Therefore, Plaintiff asserts that the ALJ's findings are not supported by substantial evidence.

Turning to my analysis, an ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted). The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Goatcher v. United States Department of Health and Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1994). "A treating physician's opinion may be rejected if his conclusions are not supported by specific findings." *Castellano v. Sec. of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

"When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around." *Goatcher*, 52 F.3d at 290 (quoting *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir.1988)). In choosing to reject the treating physician's assessment, "an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*" *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis in original).

The record in this case indicates a long standing history of treatment of Plaintiff by Dr. Rivera and other medical providers at Dr. Rivera's clinic related to Plaintiff's diabetes, hypertension, and related issues. (*See, e.g.*, Tr. at 202-06, 208, 211, 216, 219, 221, 223, 227-28, 230, 232, 324) On November 24, 2004, Dr. Rivera signed a doctor's note indicating that Plaintiff was "totally and permanently disabled". (*Id.* 210.)

Also, on January 25, 2007, Dr. Rivera completed an examination and assessed Plaintiff with diabetic neuropathy with large proteinuria, poorly controlled hypertension, advanced protein malnutrition due to protein loss, hypertensive cardiomyopathy, significant loss of vision, and severe advanced Type 2 diabetes progressing to complete insulin deficiency. (Tr. 552). Dr. Rivera stated in his notes:

> Mr. Montoya is seriously disabled by his diabetes and secondary complications. None of his medical conditions are medically reversible and are progressive even with optimal medical management. He has been making an effort to be compliant with the recommended care provided by his primary care physicians, cardiologist, ophthalmologist, and endocrinologist. I am amazed that he has not suffered a major cardiovascular event. To the extent that previous non-compliance

> exacerbated his medical problems this is water under the bridge and irreversible.

(*Id.*)

The ALJ gave no weight to Dr. Rivera's November 26, 2004 opinion that Plaintiff is totally and permanently disabled. She stated as a basis for this finding that "the finding of disability is reserved to the Commissioner", "Rivera's treatment records do not contain objective findings to support his conclusion", "he did not cite any specific limitations of the claimant's ability to perform basic work-related activities" and "Dr. Rivera's opinion is not consistent with the other substantial evidence, i.e., normal physical examination on September 13, 2004 (Exhibit 1F)". (Tr. 18.)

The ALJ also gave "very little weight" to Dr. Rivera's opinion of January 25, 2007. (Tr. 19.) She justified this on the following bases: (1) prior to January 2007 Plaintiff had not received optimal medical management of his medical conditions because of his history of noncompliance, (2) Dr. Rivera's assessment in part was based upon his belief/ understanding that Montoya suffers from proliferative diabetic retinopathy with significant loss of vision which is not consistent with the Medical Expert testimony that Plaintiff has no significant functional limitations due to his vision; (3) Dr. Rivera cited cardiomyopathy as one of the disabling complications but the echocardiography found mild left ventricular hypertrophy that has not worsened; (4) Dr. Rivera noted Plaintiff had been making an effort to be medication compliant but also noted that he had not yet taken his blood pressure medication on the day of the assessment—the ALJ stated that she was not persuaded that Plaintiff had become medication compliant; and (5) for the reasons cited above regarding Dr. Rivera's earlier disability assessment. (*Id.*)

The Commissioner argues that the ALJ clearly articulated the weight given to Plaintiff's treating physician, and gave legitimate reasons for doing so. He asserts that the ALJ properly gave no weight to Dr. Rivera's November 2004 and January 2007 opinions that Plaintiff was "totally and permanently disabled" or "seriously disabled", since she correctly noted that opinions regarding disability are reserved to the Commissioner. Further, the Commissioner argues that the ALJ then gave legitimate reasons for not affording any weight to Dr. Rivera's opinions that Plaintiff was disabled.

I find that the ALJ did not properly weigh Dr. Rivera's opinions and that a remand is also appropriate on this basis. I first note that the ALJ did not weigh Dr. Rivera's opinions as a whole from all of his medical records but simply rejected certain forms and/or assessments related to Plaintiff's disability. Thus, he did not state what weight Dr. Rivera's findings as a whole were given, such as the findings in his medical treatment notes, or whether she gave any deference to them as a treating physician. This was error that requires remand.

Second, as to the ALJ's decision to reject Dr. Rivera's disability opinions, I first address her findings that Plaintiff had not received optimal medical management of his medical conditions due to noncompliance and that Plaintiff had not become medication compliant. These findings, which were given as reasons to reject the disability assessment, fail to take into account Plaintiff's mental impairments and their impact on his compliance, as discussed in the previous section. This also needs to be addressed on remand.

Third, contrary to the ALJ's findings, Dr. Rivera's treatment notes do contain specific medical findings related to Plaintiff's diabetes and hypertension and he was not required to state specific limitations that would affect Plaintiff's ability to perform work activities in

order for those findings to be given weight. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). (a medical doctors's statements about Plaintiff's condition or impairments "are specific medical findings" and the ALJ errs in rejecting those opinions in the absence of conflicting evidence). To the extent that Dr Rivera's opinions were not clear on this issue, such as in the disability assessment, the ALJ could have contacted Dr. Rivera to find out the basis for this assessment. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) ("The Commissioner, under the governing regulations, must recontact a treating physician when the information the doctor provides is 'inadequate . . . to determine whether you [the claimant] are disabled'") (quotation omitted). Further as to Dr. Rivera's disability assessment, while this was not controlling the ALJ still had to properly weigh and consider this opinion. *Miller v. Barnhart*, 43 Fed. Appx. 200, 2002 WL 1608452, at *3 (10th Cir. 2002) ("The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner").

As to the assertion that Dr. Rivera's opinions were not consistent with the other substantial evidence of record, I note that his diagnoses and findings related to diabetes and hypertension were substantiated, at least in part by almost every other doctor that saw Plaintiff. The only exceptions noted by the ALJ were Dr. Rivera's findings about Plaintiff's vision and cardiomyopathy.

As to Plaintiff's vision, the ALJ stated that Dr. Rivera's assessment was based in part upon his belief that Plaintiff suffers from proliferative diabetic retinopathy with significant loss of vision. (Tr. 552.) She found that this is not consistent with the Medical Expert testimony of Dr. Kauver that Plaintiff has no significant functional limitations due to his

vision, relying on the notes of Plaintiff's treating eye doctor to reach his conclusions. However, the fact that Dr. Kauver stated that Plaintiff has no significant functional limitations does not mean that Dr. Rivera's diagnosis was unsupported. Indeed, Dr. Zocchi examined Plaintiff and issued an opinion consistent with Dr. Rivera's diagnosis. He confirmed that Plaintiff had eye changes due to diabetes and found that Plaintiff's vision in the left eye was "limited" and there were some spots in his vision in that eye. (*Id.* 298.) Further, he noted that while Plaintiff's vision in the right eye was good, there were small areas of leakage very close to the portion of the eye where the best vision is. (*Id.*) The left eye has more severe changes, which were affecting the very center of the eye where the best vision is, and he already had lost some vision in that eye due to this. (*Id.*) Further, even Dr. Kauver acknowledged in his testimony that Plaintiff did have diabetic retinopathy as indicated by Dr. Rivera with limited vision (20/25 in his right eye and 20/40 in his left eye)—he just felt that with Plaintiff's acuity he could still function normally. (*Id.* 28-29.)

As to cardiomyopathy, Dr. Rivera cited this as one of the disabling complications. (Tr. 552.) Again, the fact that the echocardiography results indicated that Plaintiff's mild left ventricular hypertrophy had not worsened and that the left ventricle worked properly (*id.* 185-86, 344-47) does not necessarily mean that the cardiomyopathy diagnosis was incorrect. The echocardiography results did, in fact, reveal some abnormalities. (*Id.*) The ALJ was not entitled to substitute his medical judgment for that of the physicians. *McGoffin*, 288 F.3d at 1252. Again, the ALJ could have contacted Dr. Rivera for clarification of this issue but chose not to.

I further note in connection with the ALJ's analysis of Dr. Rivera's January 2007 assessment that the ALJ selectively picked what evidence in the report supported her

findings while improperly discounting the findings that supported Dr. Rivera's assessment. This was improper. *See Lee v. Barnhart*, 2004 WL 2810224, at *3 n. 2 ("The ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability"). Further, the ALJ failed to consider how the impairments noted by Dr. Rivera in combination impact the disability analysis, even if some of the impairments are not individually disabling.

The ALJ also noted that Dr. Rivera's 2004 opinion is inconsistent with a normal physical examination on September 13, 2004. However, that examination was not performed by Dr. Rivera but by Dr. Davis, an emergency room physician who saw Plaintiff on that one occasion. The only complaint at that time was right upper quadrant pain so the evaluation obviously focused on that. (Tr. 176-77.) This one time examination by an emergency room physician related to chest pain complaints was not substantial evidence to reject Dr. Rivera's 2004 opinion. Instead, the ALJ should have determined whether the 2004 opinion of Dr. Rivera was consistent with his medical records and the records of other treating practitioners.

Also as to Dr. Rivera, even when an ALJ decides that a treating physician's opinions are not entitled to controlling weight, that does not allow him to reject the physician's opinions outright. *Langley v. Barnhart*, 373 F.3d, 1116, 1120 (10th Cir. 2004). Instead, the opinions are "'still entitled to deference and [should be] weighed using all of the [relevant] factors.'" *Id.* (quotation omitted). The ALJ's decision does not reflect that she gave deference to Dr. Rivera's findings and weighed them, or that he gave "any consideration of what lesser weight the opinions should be given or discuss[ed] the relevant factors set out in [42 U.S.C.] § 404.1527." *Id.*

I also find that the ALJ also erred in not stating what weight she gave to the opinions of other physicians and psychologists/psychiatrists who saw Plaintiff, such as Dr. Sumpter and other physicians at Pueblo Cardiology Associates), Dr. Nieto, Dr. Zocchi, who performed an examination of Plaintiff's eyes, and Dr. Francisco, an endocrinologist. She also did not discuss or analyze whether any of the numerous practitioners that Plaintiff saw in addition to Dr. Rivera were treating sources. This needs to be addressed on remand.

Finally, I address one other point raised by the ALJ. The ALJ acknowledged that Plaintiff complained of muscle wasting. (Tr. 17). She stated that "despite examination findings of 'signs of atrophy,' findings of 5/5 motor strength of the bilateral upper and lower extremities (i.e., normal strength throughout) are documented." (*Id.*) The ALJ appeared to assume from this that Plaintiff's complaints of muscle wasting were not credible. However, the record clearly supports Plaintiff's complaints of muscle wasting which appeared to result from protein-calorie malnutrition. Dr. Rivera noted "severe protein-calorie malnutrition", "progressive muscle wasting with diagnosis of severe protein-calory malnutrition", "muscular wasting", "severe protein-calorie malnutrition", "moderately severe generalized muscle wasting", "appearance was debilitated with muscular wasting", and "advanced protein malnutrition due to protein loss". (Tr. 205, 211, 212, 219, 230, 324, 552.) The ALJ's decision that normal motor strength means that the complaints and diagnoses of muscular wasting are not valid is an improper lay opinion by the ALJ.

III. CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded to the Commissioner for further fact finding and analysis consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for a rehearing pursuant to 42 U.S.C. § 405(g).

Dated: March 19, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge